PATE *vs* HENRY.

1. The keeper (or owner) of a public ferry is bound to transport persons, across the stream, after night; and a failure to do so will subject him to an action, under the statute—without a suit upon the bond.
2. But *semble,* that in such action the ferry owner may show in excuse for such failure to put one across the stream, after night, the prevalence of high winds, rendering it dangerous to attempt to cross the river; or that the application was made after the usual bed time, and that the residence of the keeper was at some distance from the ferry.

In this case, an action was commenced by Pate before a justice of the peace of Bibb County, to recover of Henry the sum of ten dollars penalty, for neglect of duty as a ferry owner. In this trial the justice rendered judgment in favor of the defendant, from which the plaintiff appealed to the County Court. In that Court the proof was, that the plaintiff applied at the ferry to be put across the stream, after night, at about six o'clock; but the defendant had no ferryman to perform this duty, and that the plaintiff was not ferried over until the next morning. Upon this state of facts the judge below determined that, by law, the owner of a ferry was not bound to put any person across the river between dark and daylight.

*Freeman,* for plaintiff in error.

The attendance of a ferryman should be constant; cases may and often do occur of urgent necessity, where if a ferryman were permitted to

claim an exemption like the one here contended for, great mischief might result. For instance the mails; persons in search of a physician—in pursuit of a criminal, &c. Again the application in this case, was within reasonable hours—the bill of exceptions specifies the time to have been about six o'clock, which must have been about the dusk of the evening.

*Pickens, contra.*

It would be unreasonable to require on the part of keepers of ferries, a constant attendance, such as is insisted on. Ferry owners are admitted to stand in the situation of carriers—would it be right then to compel them to cross rivers at all times—in darkness, storms, &c. and yet make them liable as carriers. This the Legislature surely never intended. The last statute on the subject, requires the keepers of ferries to keep good and sufficient boats, &c. but does not require them *always* to convey across the stream. But put the matter upon the usual reasoning in relation to common carriers; then would a master of a vessel be obliged to receive goods after night? If so, he would have to keep watch all night in order to receive them. In many cases a transportation at night would be at the risk of life: the night might be stormy, dark, &c. The night is intended as a time of rest; and it would be unjust to require from the ferryman what would not be demanded from one in other occupations—to lay at the bank of the river all night, waiting for travellers or others wishing to cross the river.

Secondly.—The action, if any was sustainable at all, should have been on the bond. A bond is re-

quired to be given by the ferry owner; and contemplates a security for all delinquencies.

TAYLOR J.—The Inferior Court, as it appears by the bill of exceptions, decided that the owner of a public ferry was not bound to put any person across the stream after night. This cannot be the intention of the statute, regulating this subject.— The phraseology of the act will not bear this construction, and it would be highly inexpedient that such should be the law. It would be useless to enter into a long discussion to show the inconveniences which would be attendant upon giving this latitude to ferry owners; it is enough to say the statute does not give it.

The counsel for the defendant dwells much upon the great hardship of requiring persons in this situation to expose themselves to the dangers attendant upon the transportation of persons, &c. during excessive darkness, the prevalence of high winds, or in the dead hour of the night. To require this would be hard. But it certainly would be equally so to permit a ferryman to stop a person travelling upon urgent business just at night fall, when there might be a moon shining rendering it almost as light as it would be of a cloudy day, merely because he chose to do so.

There is no danger, however, to be apprehended by the ferryman. If the wind was high, or the night dark, when the application was made to him, so as to expose him to danger in an attempt to cross, he might show this to justify his refusal: and even were it late at night, after the usual bed time, it

might, under some circumstances, as where the ferry was some distance from his dwelling, and probably in many other cases, be a sufficient excuse.

The opinion of the Inferior Court was certainly wrong.

But it is contended the suit should have been upon the bond.

The statute expressly imposes the penalty of ten dollars upon any ferryman for "failing to do his duty," to be recovered by any person detained thereby, before a justice of the peace.

It is insisted, however, that it is not shown by the proceedings below that the defendant's was a public ferry.

The indorsement on the warrant states that the suit "is brought to recover ten dollars forfeited by the defendant as a keeper of a *public ferry.*" The whole of the proceedings below, show that it was considered as a public ferry.

The judgment must be reversed; but as the defendant may be able to show some good reason for his conduct, the cause will be remanded, if his counsel wishes it; otherwise judgment will be rendered here for the ten dollars, forfeited under the statute.